UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

JOHN SCHARR AND PATRICIA A. SCHARR,

                    Plaintiffs,      **No. 1:16-cv-06821(MAT)**
                                     **DECISION AND ORDER**

          -vs-

SELECTIVE INSURANCE COMPANY OF
NEW YORK, and THE HANOVER INSURANCE
GROUP, INC.,

                    Defendants.
───────────────────────────────


## I.   Introduction

    John Scharr and Patricia A. Scharr ("Plaintiffs") seek a declaratory judgment requiring defendant Selective Insurance Company of New York ("Selective") to reimburse them pursuant to the terms of their insurance policy covering flood-related losses. Currently pending before the Court is Selective's Motion for Summary Judgment (Docket ("Dkt") #15).

## II.  Factual Background and Procedural History

    The following factual summary is drawn from the parties' pleadings, affidavits, and exhibits submitted in connection with Selective's summary judgment motion (Dkt ##15-15-4, 17-17-3; & 18-18-1). Unless otherwise noted, the facts below are undisputed.

    In December 2014, Plaintiffs purchased a house located at 2358 Lerch Road, in Penn Yan, New York ("the Property"). Selective issued a Standard Flood Insurance Policy ("SFIP") to Plaintiffs bearing policy number 0001739266 for the period of December 18,

-1-

2014, to December 18, 2015 ("the Policy"). The "Claim Guidelines In Case Of A Flood" included at the beginning of the Policy direct Plaintiffs to, *inter alia*, [n]otify your insurance representative, in writing, as soon as possible after the flood[;]" "[d]etermine the independent claims adjuster assigned to your claim and contact him or her if you have not been contacted within 24 hours after you reported the claim lo your insurance representative[;]" and "[m]ake sure that the claims adjuster fully explains, and that you fully understand, all allowances and procedures for processing claim payments on the basis of your proof of loss. This policy requires you to send us detailed proof of loss within 60 days after the loss." (Dkt #1-1, p. 2 of 48). The Policy's proof of loss requirement ("§ J. Requirements in Case of Loss") provides that "[i]n case of a flood loss to insured property, [the insured] *must*:

   1. Give prompt written notice to us;

   2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

   3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;

   4. *Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:*

      a. The date and time of loss;
      b. A brief explanation of how the loss happened;
      c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

d. Details of any other insurance that may
cover the loss;
e. Changes in title or occupancy of the
covered property during the term of the
policy;
f. Specifications of damaged buildings and
detailed repair estimates;
g. Names of mortgagees or anyone else having a
lien, charge, or claim against the insured
property;
h. Details about who occupied any insured
building at the time of loss and for what
purpose; and
i. The inventory of damaged personal property
described in J.3. above.

5. *In completing the proof of loss, you must use your own
judgment concerning the amount of loss and justify that
amount.*

6. You must cooperate with the adjuster or representative
in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate
your claim *may furnish you with a proof of loss form*, and
she or he *may help you* complete it. *However, this is a
matter of courtesy only, and you must still send us a
proof of loss within 60 days after the loss even if the
adjuster does not furnish the form or help you complete
it.*"

(Dkt #1-1, p 38 of 48) (emphases supplied).

Plaintiffs suffered a flood-related loss at the Property on

June 14, 2015. Plaintiffs notified Selective[1] of the flood-related

loss and, on July 15, 2015, Selective assigned a company known as

All Seasons Adjusting to review the loss. Daniel K. Chasey of All

Seasons ("the Independent Adjuster") inspected the Property on July

---

[1]

Plaintiffs also notified defendant The Hanover Insurance Group ("Hanover"),
with whom they had a homeowners insurance policy covering the Property. Hanover
denied coverage for the claimed loss on the basis that it was the result of a
flood-related event and not covered under the homeowners policy.

18, 2015. About the same time, Selective also retained GHD Consulting Services ("GHD"), which inspected the Property on July 31, 2015.

Based upon the Independent Adjuster's assessment, Selective initially denied Plaintiffs' claim in its entirety on August 14, 2015. The Independent Adjuster had concluded that although there was a "general condition of flooding at [the] property," the covered damage was minimal and amounted to $403.65, much less than the Policy's $5,000 deductible. In the August 14, 2015 letter, Selective informed Plaintiffs as follows:

> If you do not agree with Selective's decision to deny your claim, federal law allows you to appeal it within **60 days of the date of this letter**. Your appeal must be in writing and include a copy of this letter, *a copy of the completed Proof of Loss you submitted to the insurer*, a written statement of the basis for the appeal in as much detail as possible, including relevant policy and claim information, along with all the documentation that supports your written statement.

(Dkt #17, Ex. A) (bolded type in original).

Shortly thereafter, Selective changed its position and allowed a portion of Plaintiffs' claim, based on GHD's August 17, 2015 report. GHD found that certain undermining, soil voids, and broken concrete along the east foundation wall of the Property in the walkout lower level had been damaged by velocity flow from the flood. GHD recommended the replacement of the east foundation wall on the walkout lower level and the removal of debris and earth soil from the walkout lower level. (Dkt #15-4, ¶ 9). GHD, however,

disagreed with the balance of Plaintiffs' claim, attributing the remaining damage to an alleged failure to properly maintain the Property. (*Id.*). Based on GHD's report, the Independent Adjuster then obtained an estimate from a local contractor, who indicated that it would cost $12,854.40 to implement GHD's recommendations.

On September 30, 2015, plaintiff Patricia Scharr ("Mrs. Scharr") called Amy L. Englert ("Englert") at Selective and indicated she was "very concerned" about the Property as it was "slowly collapsing and [was] unsafe." (Dkt #17, Ex. B). Mrs. Scharr also inquired about "the status of the engineering report review." (*Id.*). Englert contacted Tim Carroll at Selective via email on September 3, 2015, to advise him about the dangerous structure and mentioned that another individual "was having the adjuster reach out to [Plaintiffs] today." (*Id.*).

On December 22, 2015, Plaintiffs were contacted by the Independent Adjuster who had prepared a proof of loss ("the Proof of Loss") on behalf of Plaintiffs requesting payment of $12,854.40 by Selective to cover the damages to the east foundation wall that Selective had agreed to cover. Plaintiffs signed and executed the Proof of Loss (Dkt #17, Ex. A) on December 22, 2015, and returned it to Selective.

Because 60 days from the date of loss had expired before Plaintiffs submitted their sworn Proof of Loss, Selective was required by law to obtain a limited waiver from the Federal Emergency Management Agency ("FEMA"). Selective submitted the

limited waiver request on December 28, 2015, to FEMA, which approved it on December 29, 2015. In granting the limited waiver, FEMA noted that it was "for only the amount of the loss and scope of the damages outlined in this request and otherwise does not waive the proof of loss or any other requirement of the [SFIP]." (Dkt #18, ¶ 9 & Ex. A). Selective subsequently released payment to Plaintiffs in the amount of $12,854.40.

Plaintiffs continued to assert a claim against Selective for the structural damages as to which it had denied coverage. On February 22, 2016, Selective sent Plaintiffs a letter (Dkt #17, Ex. D) denying any additional coverage for the damaged structural elements based on their engineer's report, which concluded that such damages were not the result of the flood event. Selective quoted pertinent excerpts from the engineer's findings as follows:

- The cracks and separations and missing cementitious coating in the exterior concrete foundation were typical for the age and type of construction and were due to long-term differential foundation movement and/or long-term differential movement of the supporting soils and were not the result of the flood event. This was concluded by the following:
  - The cracks/separations contained rounded and worn edges, indicating long-term existence (years).
  - Evidence of general building long-term (years) differential settlement were observed throughout the structure.
- The out-of-level flooring and out-of-plumb walls throughout the interior porch and first floor of the referenced structure were attributed to long-term settlement and/or long-term deflections of the supporting framing and were not the result of the flood event.

(Dkt #17, Ex. D). Selective explained that Plaintiffs' SFIP did not provide coverage for the above-quoted kind of damage, and referred Plaintiff to Section V [Exclusions], (C) of the Policy which provides, in relevant part, that Selective "do[es] not insure for loss to property caused *directly by earth movement even if the earth movement is caused by* **flood.**" (*Id.*) (bolded type in original; emphasis supplied). Selective informed Plaintiffs that if they did not agree with its decision,

> federal law allows you to appeal it within **60 days of the date of this letter** [i.e., Friday, April 22, 2016]. Your appeal must be in writing and include a copy of this letter, *a copy of the completed Proof of Loss* you submitted to the insurer; a written statement of the basis for the appeal in as much detail as possible, including relevant policy and claim information, along with all the documentation that supports your written statement.

(Dkt #17, Ex. D) (bolded type in original; italics supplied).

On April 11, 2016, Plaintiffs hired Greg Dende, PE ("Dende"), of Dende Engineering Structural Consultants to inspect the Property and review GHD's findings. Dende stated in his report,

> The engineering assessment prepared by GHD-Christian Marcello Amico, PE for Selective Insurance Company-Branchville (the flood carrier) appears to me as a thorough review made shortly after the flood occurrence and I don't take any exceptions to it. Its content has been very useful for me in grasping the first hand professional assessment of the conditions at that time.

(Dkt #17, Ex. E). Dende also observed that GHD had commented on the foundation repair work to the rear (east) exterior wall and pointed out that

> "It should be noted the walkout lower level wall was more

susceptible to flood damage due to the incomplete foundation repairs and soil excavation under the residence[.]" In my [Dende's] opinion certainly a true statement.

(*Id.*). Dende also noted "the possibility . . . that the conditions are worse than the original GHD report [prepared eight months previously], since . . . overstressed structures more often than not ultimately fall over an extended period of time and not necessarily at the point/time of impact. It should be considered in motion as we speak." (*Id.*). Dende determined that the Property was in significant danger of complete collapse due to overstress on the structure resulting from the collapsed foundation wall. (*Id.*). He opined that the Property "should be considered a danger[,]" with no hope of "salvaging/restoring it." (*Id.*).

Plaintiffs then hired Van Scott Builders, Inc. ("Van Scott") to prepare an estimate of the cost of demolishing and rebuilding the Property, as recommended by Dende. Van Scott estimated that the project would cost $214,675.79. (Dkt #17, Ex. F.).

On April 28, 2016, the Town of Milo Department of Code Enforcement and Administration ("the Town") issued a Notice of Determination – Substantial Damage letter stating that the Town's Code Enforcement Officer had determined that the Property "received damages exceeding fifty percent (50%) of the pre-damaged structure value as a result of the flooding that occurred on June 14, 2015, and identified the damage amount as $214,675.79." (Dkt #17, Ex. G). The Town stated that pursuant to the attached engineering reports

from GHD and Dende, the Property was "classified as an unsafe structure since it is significantly damaged, structurally unsafe, supported on an unstable foundation and has experienced a partial collapse . . . and  a structure unfit for human occupancy due to the high degree to which the structure is in disrepair, is unsanitary and contains filth and contamination." (*Id.*). Accordingly, the Town issued an order condemning the Property.

By letter dated April 19, 2016, and addressed to the Federal Insurance and Mitigation Administration, Federal Insurance Administrator ("FIA"), Plaintiffs appealed Selective's February 22, 2016 denial of coverage. Plaintiffs stated they were seeking

> full recoverable damages in accordance to our insurance policy because the damage to our property, 2358 Lerch Road, Penn Yan, New York 14527-9424, occurred as a direct result of a flood on June 14th, 2015. We must be paid in accordance to our insurance policy because our property meets the criteria of a substantially damaged structure and the cause of the damage is a direct result of the flood event.

(Dkt #17, Ex. H). Plaintiffs indicated that they had "[a]ttached . . . documents and a timeline of the occurred events. In addition to pictures and records." (*Id.*). There is no indication when the letter was postmarked or actually sent to FIA, or what documents were included.

On June 30, 2016, FEMA sent a reply letter to Plaintiffs indicating that in light of the new information submitted in their appeal, Selective was "reviewing [their] flood claim, and possible coverage for Increased Cost of Compliance (ICC)." (Dkt #17, Ex. I).

FEMA stated that "[a]side from the consideration of [Plaintiffs'] claim for ICC, FEMA concurs with Selective's final decision and will provide no further administrative review through the appeals process." (*Id.*).

On December 16, 2016, Selective paid Plaintiffs an additional sum of $15,000, for ICC expenses, pursuant to Coverage D under the SFIP. (Dkt #15-4, Ex. D).

On December 15, 2016, Plaintiffs commenced the instant action seeking a declaratory judgment that they are entitled to coverage under the policies issued by Selective and Hanover, respectively, for their flood-related losses sustained on June 14, 2005. The parties participated in mediation, which was unsuccessful.

Pursuant to the scheduling order entered by Magistrate Judge Marian W. Payson in March 2017, dispositive motions were to be filed by October 13, 2017. Selective filed its motion for summary judgment on July 7, 2017. Plaintiffs filed opposition papers, and Selective filed a reply. Hanover has not filed its own dispositive motion or joined in Selective's motion. Selective's motion for summary judgment was deemed submitted on the papers on August 25, 2017.

However, on October 18, 2017, Plaintiffs filed a Stipulation of Discontinuance as to Hanover, which the Court signed and filed on October 19, 2017. Hanover therefore is no longer a party to this action.

## III. General Legal Principles

## A.     Summary Judgment Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (footnote omitted).

## B.     Standard Flood Insurance Policies and Proof of Loss

Under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4127 ("NFIA"), "the federal government provides flood insurance subsidies and local officials are required to adopt and enforce various enforcement measures." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 183 (2d Cir. 2006). "The NFIP [National Flood Insurance Program], created by the [NFIA], is administered by FEMA and supported by taxpayer funds, which pays for claims that exceed the premiums collected from the insured parties." *Jacobson v. Metro. Prop. Cas. Ins. Co.*, 672 F.3d 171, 174 (2d Cir. 2012).

"Pursuant to 42 U.S.C. § 4081(a), FEMA created the Write-Your-Own Program ('WYOP'), which allows private insurers, sometimes called 'WYO companies,' to issue and administer flood-risk policies under the Government Program." *Palmieri*, 445 F.3d at 183. "Thus, while the private insurance companies administer the federal program, 'it is the Government, not the companies, that pays the claims.'" *Jacobson*, 672 F.3d at 175 (quoting *Palmieri*, 445 F.3d at 184 (brackets omitted; citation omitted)).

All SFIPs require an insured to submit an executed proof of loss within 60 days from the date of loss. 44 C.F.R. Pt. 61, App. A(I), Art. VII(J)(4)); *see also Jacobson*, 672 F.3d at 173 (quotation omitted). "In light of the compelling interest in assuring uniformity of decision in cases involving the NFIP, the Second Circuit has held that SFIP proof-of-loss requirements "must be strictly construed and enforced." *Jacobson*, 672 F.3d at 175 (collecting circuit authority).

## IV. Discussion

Selective has moved for summary judgment on the basis that Plaintiffs failed to timely submit a signed and sworn proof of loss for the additional damages they seek over and above the amount Selective already paid to them. As noted above, Plaintiffs' Policy contains a standard proof of loss provision, stating in relevant part, that "[i]n case of loss to insured property, you must: 4. [w]ithin 60 days after the loss, send [Selective] a proof of loss, which is your statement of the amount you are claiming under the

policy signed and sworn to by you. . . ." (Dkt #1, Ex. A); *see also* 44 C.F.R. Pt. 61, App. A(I), Art. VII(J)(4)). Here, the loss in question occurred on June 14, 2015. Under the Policy, Plaintiffs were required to send Selective their signed and sworn proof of loss by August 13, 2015, 60 days from the date of loss. It is undisputed that Plaintiffs did not submit, and Selective did not receive, a signed, sworn proof of loss within 60 days. Mrs. Scharr testified at her deposition that the only proof of loss she and her husband signed was the one prepared by the Independent Adjuster in the amount of $12,854.40, which they submitted on December 22, 2015, well over 60 days past the date of loss. (Dkt #15-3, Ex. D, Excerpt from Deposition of Patricia Scharr ("Schaar Dep.") at 14:10-21). When asked whether she or her husband ever submitted any proof of loss form other than that one, she replied that she "didn't know that was an option." (*Id.*, Scharr Dep. at 14:22-15:7).

Thus, Plaintiffs cannot and do not dispute that they did not submit a signed and sworn proof of loss for the entire amount claimed under the SFIP within 60 days of the flood-related loss. This alone is a basis for granting judgment as a matter of law to Selective. *See*, *e.g.*, *Ravasio v. Fid. Nat. Prop.*, 81 F. Supp.3d 274, 278 (E.D.N.Y. 2015) ("[The] [insureds]' date of loss was August 28, 2011. Considering the two Proof of Loss extensions issued by FEMA allowing up to 150 days from the date of loss, the [insureds] had until January 25, 2012 to submit additional Proofs

of Loss for any additional damages claimed. However, prior to and including that date, they failed to do so for any damages above and beyond those previously paid for by Fidelity. Accordingly, because the [insureds] have failed to comply with the requirements of the SFIP, the present action is barred as a matter of law and Fidelity is entitled to summary judgment.").

### A.  Substantial Compliance

Plaintiffs contend that they provided Selective with all of the information it needed to be adequately apprised of their claim, essentially raising a "substantial compliance" argument. Plaintiffs point out that Selective concedes receipt of a completed Proof of Loss form in December 2015, relating to the undisputed damage sustained to the east foundation wall. Plaintiffs contend that their communications with Selective, together with the Dende report, are clear evidence that Plaintiffs were asserting a claim for *all* of the alleged damage to the Property, not just the east foundation wall. Plaintiffs also point to the Town's letter that condemned the Property and estimated damages at $214,675.79, and the estimate from Van Scott indicating the same amount for the cost of demolition and rebuilding. Based on the foregoing information, Plaintiffs argue that Selective was adequately informed by Plaintiffs that the claimed loss was for the balance of the Policy by virtue of the $202,400.00 policy limit. Since Selective was afforded "the fullest opportunity to investigate, defend and intelligently estimate rights and responsibilities[,]" *Christofely*

-14-

*v. Fed. Ins. Admin.*, 580 F. Supp. 467, 470 (E.D.N.Y. 1984), Plaintiffs contend that a separate Proof of Loss form for the additional claimed damages was unnecessary, as Plaintiffs had substantially complied with the policy notice provisions.

Circuit courts have uniformly rejected "substantial compliance" arguments in the context of SFIPs. *See*, *e.g.*, *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000). In *Flick*, the plaintiff argued that despite her failure, by several months, to submit a timely proof of loss, she was entitled to recover under her SFIP because she had substantially complied with the policy. The Ninth Circuit rejected the "substantial compliance" standard:

> Because flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment. That is the simple, but powerful command of the Appropriations Clause. Congress, through a valid act of delegation to FEMA, has authorized payment of flood insurance funds to only those claimants that submit a timely sworn proof of loss. We therefore have no more power to award a money remedy to a flood insurance claimant who submits a sworn proof of loss after the 60 day time limit than we have to award a money remedy to a disability benefits claimant whose income exceeds a statutory earnings limit.

205 F.3d at 394-95 (citations and footnotes omitted)*; accord Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 657-58 (9th Cir. 2002), *opinion amended on denial of reh'g*, 317 F.3d 938 (9th Cir. 2003). The Second Circuit similarly has recognized that "[t]he principles unique to governmental insurance policies that require

a strict construction of their terms and requirements can sometimes create ostensibly inequitable results." *Jacobson*, 672 F.3d at 176.

The fact that Plaintiffs signed and submitted a proof of loss in the amount of $12,854.40 in order to receive the payment recommended by the Independent Adjuster does not relieve them of their responsibilities under the Policy to file a signed and sworn proof of loss within 60 days of the loss, setting forth *all* damages claimed under the Policy. *See*, *e.g.*, *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013) ("Strictly construing the SFIP's proof-of-loss provision, it is clear that DeCosta did not sign and swear to claiming $212,071.32 on a proof of loss, as required. Merely attaching his adjuster's estimate of damages to two executed proof-of-loss forms claiming a smaller amount does not comply. *See* 44 C.F.R. pt. 61, app. A(1), art. VII(J)(4). The law on this is clear[.]") (internal citation omitted); *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 773-74 (8th Cir. 2013) (insureds' failure to submit supplemental proof of loss of additional damage to their insurer after submitting an initial claim under insured's SFIP barred recovery on a claim for the additional damages, despite contention that insured signed the proof of loss under duress; insureds were not required to accept adjuster's damage estimate in submitting their initial proof of loss).

The unreported Eastern District of Louisiana decision on which Plaintiffs rely, *Tuircuit v. Wright Nat. Flood Ins. Co.*, No. CIV.A. 13-6268, 2014 WL 4207639 (E.D. La. Aug. 25, 2014), is factually

distinguishable and in any event, not binding authority on this Court. In *Turcuit*, the court relied on another unpublished case out of that district for the proposition that "a proof of loss may be considered even if it does not provide a 'specific amount of damages' as long as it 'provide[s] at least enough information for FEMA to evaluate the merits of the claim.'" *Id.* at \*3 (quoting *Copeland v. Fed. Emergency Mgmt. Agency*, No. 03-2704, 2004 WL 325577, at \*1, \*3 (E.D. La. Feb. 18, 2004); brackets in original). It was undisputed that the insured, Tuircuit, had submitted an unsigned and unsworn proof of loss for his claim of $214,528.04; Wright, the insurer argued Tuircuit never submitted the signed proof of loss for $214,528.04 dated October 20, 2012. Tuircuit alleged that a signed proof of loss was indeed submitted to Wright and submitted (1) a copy of the disputed, signed October 20, 2012 proof of loss and (2) a sworn statement from the third-party adjuster hired by Tuircuit stating that the adjuster helped submit the signed October 20, 2012 proof of loss to Wright. Although Wright contended that the evidence of the signed October 20, 2012 proof was not credible, the district court noted that it could not resolve such credibility disputes on summary judgment. Based on the record before it, the district court in *Tuircuit* was satisfied that a genuine issue of material fact existed regarding whether a timely signed proof of loss for $214,528.04 was submitted to Wright. Because it appears that a proof of loss for the entire amount claimed was submitted to the insurer in *Tuircuit*, the only question

-17-

remaining was whether it was signed and timely. *Tuircuit* is therefore on a slightly different factual footing than Plaintiffs' case. Even if *Tuircuit* were directly on point, it cannot be considered binding authority sufficient to cause this Court to disregard the Second Circuit's clear directive, based on Supreme Court precedent, that "[i]n the context of federal insurance policies, . . . an insured must comply strictly with the terms and conditions of such policies." *Jacobson*, 672 F.3d at 176 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947)).

Plaintiffs' failure to timely submit a signed and sworn proof of loss for *all* damages claimed under the Policy is a basis for denying their claim against Selective as a matter of law.

**B.    Waiver**

Plaintiffs alternatively argue that Selective has waived the proof of loss requirement because (1) Selective "continued to process the claim well beyond the alleged sixty day deadline" and made a payment to  Plaintiffs in December 2015, notwithstanding Plaintiffs' failure to submit a Proof of Loss within 60 days; and (2) Selective issued a denial letter almost eight months after the loss occurred without referencing Plaintiffs' failure to file a timely Proof of Loss.

Plaintiffs' waiver argument is precluded by the express terms of the Policy, which provides, in relevant part as follows:

D. Amendments, Waivers, Assignment

> This policy cannot be changed nor can any of its
> provisions be waived without the express written consent
> of the Federal Insurance Administrator. No action we take
> under the terms of this policy constitutes a waiver of
> any of our rights. . . .

(Dkt #1-1, p. 30 of 48). As Defendants argue, federal courts
consistently have rejected waiver arguments substantially the same
as the one urged by Plaintiffs here. For instance, in *Sanz v.
United States Sec. Ins. Co.*, 328 F.3d 1314 (11th Cir. 2003) (*per
curiam*), Hurricane Irene caused canals on both sides of the
plaintiff's neighborhood to converge, causing water to flood the
area and enter his home. Although there were no immediate signs of
damage, Sanz began to notice cracks in the walls of his house after
approximately two months. On February 29, 2000, Sanz notified
Security, his insurance carrier, of the damage. In April of 2000,
adjusters and a structural engineer inspected the premises to
determine the cause and scope of the damage. According to Sanz, the
adjusters informed him that he needed to submit estimates of the
damage to Security, which he did in June 2000. Sanz contended that
Security continued to reassure him that all paperwork had been
filed and that Security would "take care of him." However, Security
denied his claim. *See id.* at 1317. On appeal, Sanz argued that
"Security waived the 60-day proof of loss requirement because
Security continued to process his claim and repeatedly assured him
that all necessary forms had been filed." *Id.* at 1318. The Eleventh
Circuit found it significant that Sanz admitted that (1) he did not
submit a proof of loss as required by his policy; and (2) he did

not receive written notice from the Federal Insurance Administrator that the proof of loss requirement was waived. *Id.* at 1318-19. The Eleventh Circuit agreed with its five sister circuits that "have concluded that there must be strict compliance with the terms and conditions of federal flood insurance policies and that the failure to file a proof of loss prohibits a plaintiff from recovery." *Id.* at 1317-18 (collecting circuit authority). Accordingly, the Eleventh Circuit held, "Sanz' failure to file a proof of loss within 60 days without obtaining a written waiver of the requirement eliminate[d] the possibility of recovery." *Id.* at 1319. Although the Court acknowledges that Sanz is not binding authority upon this Court, it is factually very similar to Plaintiffs' case.

The Second Circuit has not expressly decided whether equitable defenses of waiver and estoppel are available in the NFIP context. However, as noted above, the Second Circuit has adopted the approach of its sister circuits that have "uniformly held that [SFIP proof-of-loss] requirements must be strictly construed and enforced." *Jacobson*, 672 F.3d at 175 (citing *Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516 (6th Cir. 2008); *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337 (11th Cir. 2007); *Phelps v. FEMA*, 785 F.2d 13 (1st Cir. 1986); *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805 (3d Cir. 2005); *Dawkins v. Witt*, 318 F.3d 606 (4th Cir. 2003); *Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001); *Flick*, 205 F.3d 386, *supra*; *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998)). The Second Circuit emphasized that it did so "in

part because '[t]here is a compelling interest in assuring uniformity of decision in cases involving the NFIP[,]'" *id.* (quoting *Flick*, 205 F.3d at 390), and in part because "different principles are at stake . . . '[w]here federal funds are implicated,'" *id.* (quoting *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005)). The Second Circuit observed that the Supreme Court had long admonished "'those who seek public funds [to] act with scrupulous regard for the requirements of law. . . [and] are expected to know the law and may not rely on the conduct of Government agents contrary to law.'" *Id.* at 175-76 (quoting *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984)).

Plaintiffs also argue that Selective waived any defense of failure to file a proof of loss because at no time prior to the commencement of this litigation did it "assert a defense based upon a failure to timely submit a proof of loss." (Dkt #17-1 at 8). However, Selective could not waive any requirements under the NFIP. *See, e.g., Jacobson*, 672 F.3d at 177 ("It is well established . . . that the actions of an insurance company under the NFIP cannot waive requirements set by the government, or operate as an estoppel against the government.") (citing *Gowland*, 143 F.3d at 955; other citation omitted). Moreover, Plaintiffs have not offered, and the Court has not found, any legal authority for the proposition that Selective was required to keep them apprised of their proof-of-loss obligations under the terms of their insurance policy. To the

contrary, federal courts have expressly held that "'[w]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds.'" *Jacobson*, 672 F.3d at 175 (quoting *Wright*, 415 F.3d at 388); *see also, e.g., Ravasio*, 81 F. Supp.3d at 278 ("Plaintiffs contend that had Fidelity raised the issue of timeliness of the Proof of Loss sooner or spelled out this affirmative defense in greater detail, they could have sought a waiver or extension from FEMA. Even if this is true, the Plaintiffs fail to cite any authority for the proposition that the onus is on the insurance carrier to keep a claimant abreast of the various Proof of Loss requirements."). Indeed, as quoted at length above in this Decision and Order, the Policy carefully and repeatedly advised Plaintiffs of their obligations and the conditions precedent to obtaining reimbursement for flood-related losses. In addition, the Court notes that in each letter sent by Selective, the 60-day proof of loss requirement was included and highlighted in bold-faced type.

## C. Estoppel

Plaintiffs also assert that "estoppel against the United States may be appropriate" (1) "where the conduct of the government is relied upon to the[ir] detriment," (2) "where the government's conduct threatens to work a serious injustice," and (3) where the public's interest would not be unduly damaged by the imposition of estoppel. (*See* Dkt #17-1 at 5).

The Supreme Court has yet to hold that equitable estoppel is, *per se*, unavailable against the federal government, but it has "never upheld an assertion of estoppel against the [g]overnment by a claimant seeking public funds." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990) ("*Richmond*"). In *Richmond*, the respondent sought benefits-related advice from Navy employee relations personnel and received erroneous oral and written information regarding how to stay below a statutory limit on earnings, since if his earnings exceeded the limit, he would be disqualified from continuing to receive a disability annuity based on his years of civilian service with the Navy. When the respondent's reliance on the erroneous information caused him to earn more than permitted by the relevant statute, the Office of Personnel Management denied him six months of benefits. The respondent appealed, and was unsuccessful. However, the lower circuit court of appeals reversed the final administrative decision denying benefits on the basis that the government provided misinformation to the respondent which estopped it from denying payment of benefits, despite the statutory provision to the contrary.

The Supreme Court granted *certiorari* to address the question whether "erroneous oral and written advice given by a Government employee to a benefits claimant may give rise to estoppel against the Government and so entitle the claimant to a monetary payment not otherwise permitted by law." *Id.* at 415-16. The Supreme Court

began by noting that from its "earliest cases," it has "recognized that equitable estoppel will not lie against the Government as it lies against private litigants." *Id.* at 419. The Supreme Court emphasized that its precedents have "underscore[d]" "the straightforward and explicit command of the Appropriations Clause[,]" which

> means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress. . . . Just as the pardon power cannot override the command of the Appropriations Clause, so too judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.

*Richmond*, 496 U.S. at 424 (some internal quotations omitted). Although cognizant of "the individual hardship," *id.* at 434, created by its rejection of estoppel in that case, the Supreme Court could not undermine the fundamental purpose of the Appropriations Clause, which was "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants[.]" *Id.* at 427-28. Accordingly, the Supreme Court held, "payments of money from the Federal Treasury are limited to those authorized by statute[,]" *id.* at 416, and it reversed the contrary holding of the circuit court below.

The case chiefly relied upon by Plaintiffs in support of their estoppel theory, *Meister Bros., Inc. v. Macy*, 674 F.2d 1174 (7th Cir. 1982), predates *Richmond*. Even prior to *Richmond*, *Meister*

apparently was an outlier, which the Seventh Circuit itself recognized. *See Meister*, 674 F.2d at 1177 ("emphasiz[ing] that [its] holding is of necessity limited to the unique circumstances of [the] case" and was "not intend[ed] to intimate in any way an appropriate standard for resolution of future cases"). In a 2003 case involving the National Flood Insurance Program, the Eleventh Circuit declined to follow *Meister* in light of *Richmond* and the fact that "every circuit court to address the issue since *Meister*" had reached a "contrary conclusion[.]" *Sanz*, 328 F.3d at 1318 n. 6 & *id.* at 1318-19 (collecting cases). As the Eleventh Circuit noted in *Sanz*, *Richmond* abrogated the reasoning underpinning *Meister*. The Court need not determine whether or not it should follow *Meister* because that case is factually inapposite. In particular, unlike *Meister*, there is no indication here that Selective or FEMA provided erroneous or misleading information to Plaintiffs. *Contrast with Meister*, 674 F.2d at 1176-77.

Although the Second Circuit has not expressly ruled on the issue, some circuit courts specifically have "held that FEMA and its agents may not be estopped from asserting proof of loss requirements." *Bagley v. New York Cent. Mut. Fire Ins. Co.*, 3:13-CV-00241(BKS/DEP), 2015 WL 12556146, at *6 n. 5 (N.D.N.Y. June 17, 2015) (citing *Shuford v. Fid. Nat. Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1342-43 (11th Cir. 2007); *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1056 (5th Cir.

2008)). *Shufurd* was a claim for benefits under the National Flood Insurance Program where the claims administrator had dispensed with the 60-day proof of loss deadline and extended it to one year. However, Fidelity erroneously sent a notice to the insured stating that the 60-day deadline still applied. The insured did not file a proof of loss within the new, one-year deadline, and Fidelity denied the claim. The insured argued that Fidelity should have been equitably estopped from raising its failure to submit a proof of loss as a defense because it sent a letter erroneously stating that the 60-day proof-of-loss requirement applied. The Eleventh Circuit disagreed. Finding that Fidelity "was acting as a fiscal agent of the United States, *see* 42 U.S.C. § 4071(a)(1)," the Eleventh Circuit held that "*Richmond* applie[d]." *Shuford*, 508 F.3d at 1343. The plaintiff's suit in *Shuford* "raise[d] the same concerns, under the Appropriations Clause, as a suit against a governmental entity because benefits under the National Flood Insurance Program are paid from the federal treasury." *Id.* Therefore, "[e]quitably estopping Fidelity from raising the failure to file a proof of loss as a defense would allow the erroneous letter from Fidelity to alter the requirements for the disbursal of federal funds[,]" and pursuant to "*Richmond*, equitable estoppel [was] unavailable to Shuford." *Id.*

Some district courts within the Second Circuit have considered an estoppel argument against an insurer acting as an agent of the federal government, but have held that such defense is only

available if the insured can prove "affirmative misconduct." *Ravasio*, 81 F. Supp.3d at 278 (quoting *Sfoglia v. Hartford Fire Ins. Co.*, Case No. 2:07-cv-00800(JS)(MLO), Rec. Doc. 65 (E.D.N.Y. June 17, 2009) (unpublished opn.) (citing *Exim Mortg. Banking Corp. v. Witt*, 16 F. Supp.2d 174, at 178 n. 10 (D. Conn. 1998) ("FEMA did not make any misrepresentation to plaintiff. In fact, FEMA candidly and repeatedly advised Exim of the importance of the proof of loss, and ultimately denied the claim for failure to file the proof of loss. Further, plaintiff does not claim any misrepresentation or affirmative misconduct on the part of FEMA on which it reasonably could have relied in failing to file the completed proof of loss."); *Diamond v. Fed. Emergency Mgmt. Agency*, 689 F. Supp. 163, 169 (E.D.N.Y. 1988) (estoppel against the federal government requires detrimental reliance on "affirmative, serious misconduct," not present in that case)). The Court need not weigh in on this unsettled question, for even assuming *arguendo* that Selective could be estopped upon a showing of "affirmative misconduct," Plaintiffs have failed to meet this high standard. Plaintiffs have not asserted any misrepresentation, much less affirmative misconduct, by Selective or FEMA, and none is evident on the record before the Court.

While the Court is sympathetic to Plaintiffs' financial hardship, the Supreme Court has warned that "not even the 'temptations of a hard case' should cause courts to read the requirements of a federal insurance contract with 'charitable

laxity.'" *Sanz*, 328 F.3d at 1318 (quoting *Merrill*, 332 U.S. at 386). Accordingly, the Court is compelled to reject Plaintiffs' equitable defenses.

## V. Conclusion

For the reasons set forth above, the Court grants Selective's Motion for Summary Judgment (Dkt #15) in its entirety. Also, as noted above, Plaintiffs submitted a Stipulation of Discontinuance as to Hanover which the Court signed and filed on October 19, 2017, thereby terminating Hanover as a party to this action. Accordingly, Plaintiffs' Complaint (Dkt #1) is dismissed in its entirety. The Clerk of Court is directed to close this case.

**SO ORDERED.**


**S/Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:     October 23, 2017
           Rochester, New York